UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CR00703 JCH (AGF) |
| ) | |
| JEROME T. McDANIELS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motion filed by Defendant, Jerome T. McDaniels. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress identification testimony. (Doc. #17).

An evidentiary hearing was held on January 18, 2006. The government was represented by Assistant United States Attorney Thomas C. Albus. Defendant was present and represented by his attorney, Annette Llewellyn. At the hearing, the government presented the testimony of Detective James Murphy, who has been employed with the St. Louis Metropolitan Police Department (SLMPD) for approximately 13½ years and has been a Detective for 3½-4 years; Detective Christopher Simeone, who has been employed with SLMPD for approximately 12 years and has been a Detective for approximately 3 years; and Sergeant John Russo, who has been employed with SLMPD

for more than 11 years and has been a uniform Sergeant for approximately seven months.[1] Defendant presented the testimony of Officer Charles Boone, who has been employed as a correctional officer with the City of St. Louis for approximately 7 years. The parties were given until January 25, 2006, to post-hearing memoranda, after which the matter was taken under advisement.

Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On October 31, 2003, at approximately 10:00 a.m., two young women were the victims of an attempted robbery outside of a check cashing business at 1315 N. Kingshighway, in the City of St. Louis. As the two women pulled in to enter the check cashing business, they observed three black males in a green Mazda automobile. The women went inside, and as they exited they noticed that now there were just two men in the vehicle. As they walked past the vehicle and were within a few feet of the men in the car, the man in the passenger seat of the green Mazda demanded the purse of one of the women, and she refused. The passenger pulled out an SKS assault rifle, pointed it at her, and demanded her purse, but the woman again refused. The women were able to get to their car and drive away, calling 911 on a cell phone.

---

[1] At the time of the investigation, Sgt. Russo was a Detective, and will hereafter be referenced as Detective (Det.) Russo.

At Union Boulevard, the victims saw a police car and advised the officers of the attempted robbery, providing a description of the Mazda and its license plate. The police began an intensive search for the green Mazda, and shortly after the incident, two officers, Sandra Watson and Regina Moore, spotted the vehicle approximately four blocks from the check cashing business. The officers observed two black males at the vehicle, one sitting in the passenger seat and the other standing outside the car. The officers approached the vehicle and asked to see the subjects' hands, but they did not comply. As the officers got closer to the vehicle, within approximately 6-10 feet, the passenger put the Mazda in reverse and backed down the street, while the subject outside fled on foot. The Mazda hit the curb approximately one block away, and the passenger got out of the car and fled on foot. Neither of the suspects were apprehended at that time, but the officers believed they were able to get a good look at the two suspects. Inside the abandoned Mazda the officers found a firearm.

Det. Russo, who had been assigned to investigate the case, went to where the Mazda had been located and also interviewed the two victims. The victims identified one of the individuals (suspect #1) as a black male, medium complexion, braided hair, facial hair, approximately 5'5" - 5'7" in height, approximately 180 pounds in weight, wearing a blue hooded sweatshirt with white sleeves and blue jeans. Suspect #2 was described as a

black male, dark complexion, the same height, and a little different weight.[2] Both were described as being between 17-20 years old.

The evidence unit was called to investigate the vehicle and some days later reported they had found latent prints on the green Mazda that matched Defendant Jerome McDaniels and prints of an individual named Gregory Rowan on the car or the firearm. Det. Russo obtained pedigree information and photographs of both Defendant McDaniels and Rowan from the department's EPIC system, a computer database that contains both identifying information and photographs of individuals with prior contact with law enforcement. He then prepared two photo spreads, one pertaining to Defendant, marked as Govt. Ex. 2, and one pertaining to Gregory Rowan. Defendant's photograph appears as number 3 in the photo array marked as Ex. 2. At this time, neither suspect was in custody.

On November 10, 2003, Det. Russo presented the photo arrays, separately, to the two victims. Although both victims made a tentative identification of Defendant, both said they were not sure, because the hair of the person was different from what appeared in the photo array. Det. Russo also noted at the hearing that the photograph of Defendant was not recent. One or both victims said they would prefer to see the individual in person

---

[2] Further detail regarding the extent to which the weight of suspect #2 differed from that of suspect #1 was not provided at the hearing.

before making a positive identification.[3]

Defendant was taken into custody on January 12, 2004, but formal charges were not filed at that time related to this incident. Pursuant to SLMPD procedures, detectives who may not otherwise be involved in the investigation are responsible to conduct lineups, and in this instance, Dets. Murphy and Simeone were requested to assist. Identifications involving lineups are conducted on the second floor of the Justice Center, located in downtown St. Louis. Witnesses view the lineup from a witness room that has a one-way mirror. The actual lineup room, where the suspect and the other individuals or foils stand, is accessed from a hold-and-release room, which is not visible from the witness room.

After Defendant McDaniels was taken into custody, Det. Murphy conveyed Defendant to the Justice Center and selected three other individuals who matched Defendant's appearance to participate in the lineup with Defendant. He attempted to select others who matched Defendant's height, skin color, and weight, and believed he was successful in finding such individuals.

Defendant was not initially cooperative with the lineup. While in the hold-and-release room, Defendant made threats to the officers and said he would not participate in the lineup. As a result, the detectives placed Defendant in handcuffs while in the hold-and-release room, and Officer Boone, who was assigned to the second floor that day, was

---

[3] At the hearing, the government represented that at trial it would not seek to introduce the tentative identification by the victims of Defendant from the photo spreads.

called to assist.  Lieutenant Cooper and Sgt. Vince Simpher were also present in the room.  At times Defendant said he would not participate in the lineup without his lawyer present, and unsuccessful efforts were made to call Defendant's lawyer.  Eventually Defendant did calm down and agreed to participate in the lineup.

Defendant was given the opportunity to select the position in which he would stand, and he selected position number 3.  Defendant's handcuffs were removed in the hold-and-release room prior to his entry into the lineup room, and Det. Murphy, Officer Boone, and perhaps one or two others accompanied Defendant and the other participants into the lineup room.  Govt. Ex. 1 is a true and correct photograph of the lineup that was conducted.

Meanwhile, the two female victims were asked to come downtown, and Det. Simeone greeted them in the lobby upon their arrival.  He did not conduct any interview of the victims prior to having them view the lineup.  He advised each victim that the police might or might not have the individual responsible for the attempted robbery, and requested that they view the lineup to see if they recognized anyone.  He did not say that any of the individuals definitely was responsible.  He escorted the victims up to the witness room one at a time.  He brought the first witness to the witness room and had her wait outside while he confirmed that the lineup was ready.  Govt. Ex. 1 reflects the lineup as seen from the viewing room.  The officers in the lineup room were probably not visible to the victims from the viewing room.

Each of the victims was brought into the viewing room separately, and they were not allowed to speak with one another during the identification process. Det. Simeone told each victim to take her time, but neither he nor any of the officers present in the lineup room did or said anything to indicate one individual over another. Each of the victims looked at the lineup for perhaps 10-20 seconds and positively identified Defendant McDaniels as the individual involved in the incident on October 31, 2003, saying something similar to, "That's him." When asked to state the number of the individual and what he had done, each of the victims identified #3, and indicated that he was the one who had the rifle. Neither of the witnesses "hemmed or hawed" in making their identification, and each was sure Defendant was the person she had seen.

The following day, on January 13, 2004, Det. Russo contacted Officers Watson and Moore, the officers who had seen the suspects with the green Mazda following the incident, to view a photograph of the lineup. Each came to his office separately, and they did not speak with one another in between the viewings. Prior to the identifications, Det. Russo did not do anything to indicate to the officer/witnesses who the suspect was, nor did he provide any information to them regarding the investigation, such as information regarding the fingerprints found. Det. Russo did not show the officers the photo array marked as Govt. Ex. 2; he showed each of the officers only the digital photograph of the lineup, a copy of which is marked as Govt. Ex. 1. Both officers positively identified the Defendant as one of the individuals they had seen on October 31, 2003, and both were sure of their identifications.

7

**CONCLUSIONS OF LAW**

Defendant has filed a motion to suppress the lineup identifications on Fifth Amendment Due Process grounds, asserting that the identification procedures used were impermissibly suggestive and created a substantial likelihood of a misidentification. Although Defendant also elicited testimony at the hearing suggesting a possible sixth amendment challenge to the identifications, the parties filed a stipulation following the hearing acknowledging that the lineup was conducted prior to the filing of any charges, and that Defendant's sixth amendment rights were not at issue and were not being asserted by Defendant. (Doc. #36). Defendant stipulated that the sole issue before this Court is whether the lineup identifications of Defendant on January 12 and 13, 2004, violated Defendant's Fifth Amendment Due Process rights.

A defendant's constitutional right to due process may be violated by pretrial confrontation procedures that are unnecessarily suggestive and conducive to an irreparably mistaken identification. Stovall v. Denno, 388 U.S. 293, 302 (1967). Because it is the likelihood of misidentification that violates the right to due process, the court's inquiry focuses on the reliability of the identification. Neil v. Biggers, 409 U.S. 188, 199 (1972).

Any analysis of identification testimony involves a two-step approach. First, the court must examine whether the identification procedures used were unduly suggestive. Biggers, 409 U.S. at 198-99. Second, if the procedures used were unduly suggestive, the court must then look to the totality of the circumstances to determine whether the

identification testimony is nevertheless reliable.  Manson v. Brathwaite, 432 U.S. 98, 114, 116 (1977).  In determining whether the identification is reliable, the court may look to such factors as the witness's opportunity to view the defendant, the witness's degree of attention, the accuracy of any prior description given by the witness, the witness's level of certainty in his or her identification, and the length of time between the occurrence described and the confrontation.  Id. at 114; United States v. Johnson, 56 F.3d 947, 953-54 (8th Cir. 1995).  The identification testimony may be admitted if the reliability of the identification judged by the above factors outweighs the effect of any undue suggestion.  Id.  Each case must be reviewed on its own facts.  See Braithwaite, 432 U.S. at 114.

In this instance, Defendant has not shown the lineup procedures to be unduly suggestive with respect to either the victims or the officer/witnesses.  This is not like cases where the witness was shown only a single individual or a single photograph.  Here the officers assembled in-person lineups, and for the distractors, or foils, they attempted to select other individuals who fairly matched the defendant in appearance.  In this regard, the Court believes the officers where fairly successful.  The other individuals in the lineup were similar to Defendant in height, skin color, complexion, and build.  Granted, the foils each differed from Defendant in some respects, but that is to be expected with an in-person lineup, as opposed to a photo spread where officers may have hundreds of photographs from which to choose.  Although one of the individuals in the lineup may have been a bit taller than Defendant, the difference was minimal, and the other two were very close in height to Defendant.  See United States v. Traeger, 289 F.3d

461, 474 (7th Cir.), cert. denied, 537 U.S. 1020 (2002) (lineup not impermissibly suggestive though suspect larger than other participants because size differential not too great; authorities "are not required to search for identical twins in age, height, weight, or facial features").

Defense counsel suggested on cross-examination that Defendant's hairstyle was a bit different from that of the other foils, and that his shirt appeared to have a tear in it, which the others did not, but these differences are not sufficient to make the lineups themselves unduly suggestive. While the Defendant's clothing was different from that of the other foils, there is no suggestion that Defendant's clothing at the time of the lineup was any more similar to the clothing worn at the time of the incident than anyone else's, nor does what appears to be a small tear in the shirt Defendant is wearing under his jacket cause him to stand out more than the other individuals. See United States v. Burbridge, 252 F.3d 775, 780 n.5 (5th Cir. 2001) (that the defendant was only one in photographic lineup with black t-shirt not impermissibly suggestive); Harker v. Maryland, 800 F.2d 437, 444 (4th Cir. 1986) (photo array not impermissibly suggestive where only one other individual wore clothing similar to defendant's clothing, as identification based more on facial features than clothing). In addition, Defendant's hair appears fairly similar to the individual in fourth position. Overall, the Court finds the composition of the lineup to be fair and reasonable. See United States v. Rose, 362 F.3d 1059, 1066 (8th Cir. 2004) (photographic lineup not unduly suggestive although defendant's eyes may have appeared closed in his photograph and his hair was shorter than the rest, where basic physical

features of others were consistent with description provided by witness and generally similar to defendant's features); Johnson, 56 F.3d at 954 (photo spread comprised of African-American men with similar features to the African-American suspect was proper).

The detectives also employed other procedures designed to minimize any unfair influences. Prior to the lineups, the victim/witnesses were kept separate from one another and were not permitted to speak to one another during the course of the identification process. Consistent with what is considered to be the best practice, the detective did not indicate they in fact had a suspect in custody, but rather indicated that the individual involved may or may not be in the lineup. Cf. United States v. Bowman, 215 F.3d 951, 965-66 (9th Cir. 2000) (lineup not impermissibly suggestive though witnesses knew suspects were in custody and witnesses had not been interviewed before viewing lineup). Defendant was permitted to select his own position in the lineup, and neither the officers in the lineup room nor the detective with the victim/witnesses did anything to suggest the selection of one individual over another.

Nor does the fact that the victims were shown a photo array that included a picture of Defendant prior to the in-person lineup render the lineup identifications unduly suggestive. See United States v. Gipson, 383 F.3d 689, 698 (8th Cir. 2004) (photographic lineup not impermissibly suggestive where witness unable to identify defendant from first photographic lineup but identified defendant one week later from second photographic lineup that contained different picture of defendant); Manning v. Bowersox, 310 F.3d

11

571, 577 (8th Cir. 2002) (identification not subject to suppression though defendant's picture only one common to two photo arrays; witness said defendant in the first array looked similar to person she had seen, but noted that his hair was lighter, and was shown second array in which defendant had lighter hair); United States v. Harris, 281 F.3d 667, 669 (7th Cir. 2002) (lineup not unduly suggestive where witness tentatively identified defendant in photo array shown day after robbery and thereafter identified defendant in lineup six months later); Johnson, 56 F.3d at 953-54 (photographic lineup not unduly suggestive where witness shown two photo arrays and defendant was only one appearing in both arrays).

Defendant has not identified anything unduly suggestive about the photo array itself or the manner in which it was presented to the two victims, and the Court sees nothing in this record to indicate that either the photo array itself or the manner in which it was displayed to the victims was unduly suggestive. See Johnson, 56 F.3d at 953-54. And the government has asserted, in any event, that it will not seek to introduce at trial the tentative identifications made by the victims. Moreover, the Court notes that two months passed between the photo identification and the in-person lineup, lessening any undue impact. See Harris, 281 F.3d at 670-71 (unlikely that photo array influenced identification in lineup conducted six months later). Further, like in Manning, the victims tentatively identified Defendant in the photo array, but noted that the perpetrator's hair was different from what was depicted in the photograph. 310 F.3d at 577. See also United States v. Johnson, 114 F.3d 435, 442 (4th Cir. 1997) (no due process violation

despite unduly suggestive out-of-court identification involving the display of a single photograph, as later in-court identification was sufficiently reliable under the circumstances).

For similar reasons, Defendant has not shown that the identification process used with the police officer witnesses was unduly suggestive. They were not shown any photo arrays prior to viewing the picture of the lineup, nor were they given any information regarding the investigation prior to their identifications. Each of the officer/witnesses viewed the photograph of the lineup separately and did not discuss the matter with one another between the viewings. And Det. Russo did not do anything to indicate one individual over another as the suspect.

Based on the record as a whole, including a review of the photograph of the lineup itself, Defendant has not shown that the identification procedures used with any of the witnesses were unduly suggestive. In light of this conclusion, it is unnecessary to address the reliability of the identification testimony. Assuming, <u>arguendo</u>, the identification procedures were unduly suggestive, defendant's suppression motion still fails, because identifications made by each of the three eyewitnesses are nonetheless reliable.

In this instance, the evidence is strong on all but one of the <u>Biggers</u> factors. Addressing the victim/witnesses first, each had a good opportunity to view the perpetrator, as they saw him from but a few feet away, engaged in conversation with him, and had ample time to observe his characteristics. <u>Burbridge</u>, 252 F.3d at 779-80 (single-person show-up deemed reliable where tellers were within 2-5 feet of the robber, for

approximately 15 seconds, and had opportunity to observe robber's face). The incident also took place early in the day, during daylight hours. The victims thereafter provided descriptions of the individual that seem fairly to match Defendant's description. And though the lineups occurred approximately 2½ months after the incident, this length of time is not so great as to suggest the likelihood of misidentification. See Biggers, 409 U.S. at 200 (identification of rape suspect 7 months after crime did not violate due process); Harris, 281 F.3d at 669 (lineup conducted six months after incident not subject to suppression); United States v. Plunk, 153 F.3d 1011, 1022 (9th Cir.) (identification reliable because time lapse, although significant, was less than 7 months approved in Biggers), amended on other grounds, 161 F.3d 1195 (1998). Each of the victims also selected Defendant rather quickly and was also certain of her identification.

For similar reasons, the Court also finds the identifications by the officers from the digital photograph of the lineup sufficiently reliable, in any event. The officers saw Defendant during the daylight hours, continued to watch him as they approached his vehicle, and had come within 6-10 feet of Defendant before he drove off. It is also significant that the identification was made by officers who would have been trained to be attentive and would have known the importance of their observation. United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (though defendant was observed for only a moment, identification sufficiently reliable where defendant was observed from 3-10 feet away, during daytime, and identification was by police officer who "surely employed his

14

highest degree of attention throughout the controlled purchase"). Finally, the officers were both certain of their identification.

That all four of the witnesses independently identified the same individual also bolsters the reliability of the identifications. United States v. Rogers, 73 F.3d 774, 778 (8th Cir. 1996) (identification reliable where at least two other witnesses identified the defendant). Finally, although the undersigned is not relying on the strength of the government's case in making this determination, the Court notes that the other evidence presented makes the case of mistaken identification extremely remote. Kennaugh v. Miller, 289 F.3d 36, 48 (2d Cir. 2002); Rogers, 73 F.3d at 778. The police found Defendant's fingerprints on the green Mazda, which the suspects were observed to have abandoned immediately after the incident and while still near the scene of the incident. As such, the lineup identifications by the victims and the police officers should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Identification Testimony (Doc. #17) be **denied**.

The trial in this matter has been set for **Monday, March 13, 2006, at 9:00 a.m.**, before the **Honorable Jean C. Hamilton**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an

extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

_____
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 31st day of January, 2006.